IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES LOCAL 2586, et al., ) ) ) ) | |
| Plaintiffs, ) ) | Case No. CIV-21-1130-SLP |
| v. ) ) | |
| PRESIDENT JOSEPH R. BIDEN, in his official capacity as President of the United States, et al., ) ) ) ) | |
| Defendants. ) | |

**O R D E R**

Before the Court is Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction and Brief in Support [Doc. No. 9]. The matter is fully briefed. *See* Defs.' Resp [Doc. No. 34] and Notice [Doc. No. 35]; Pls.' Reply [Doc. No. 40]; Defs.' Surreply [Doc. No. 44] and Pls.' Notice [Doc. No. 47].[1]

**I.   Introduction**

Plaintiff, Local 2586 of the American Federation of Government Employees (AFGE), is a labor union representing federal civilians employed by the Department of Defense (DOD) at the Altus Air Force Base. Plaintiffs Brian King and Sandy Lawson are federal civilian employees of the DOD, employed at Altus AFB. And Plaintiff Melody A. Graves is a federal civilian employee employed by the DOD at its facility in Fort Leonard Wood, Missouri. The Court collectively refers to King, Lawson and Graves as the "Civilian Employees."

---

[1] Citations to the parties' briefing submissions reference the Court's ECF pagination.

Collectively, Plaintiffs challenge enforcement of Executive Order 14043 issued by President Biden on September 9, 2021 and directing federal agencies to require that their employees be vaccinated against COVID-19, unless a legally required exception applies. *See* Exec. Order No. 14043 § 2, 86 Fed. Reg. 50,989, 50, 990 (Sept. 9, 2021) (EO 14043). The Civilian Employees oppose being required to receive any dose, or any additional dose of the COVID-19 vaccine. The Civilian Employees remain employed in the positions they held at the time the Complaint was filed. The Civilian Employees have each submitted requests for exceptions to the vaccination requirements and those requests remain pending. The Civilian Employees are not required to become vaccinated during the pendency of the requests.

Plaintiffs commenced this action on November 29, 2021.[2] Plaintiffs bring the following claims for relief: Count I – Violation of Fifth Amendment (Substantive Due Process; Count II – Violation of Emergency Use Authorization Provisions of the Food, Drug and Cosmetics Act, Resulting in Violation of the Fifth Amendment; Count III – Violation of the Fifth Amendment as to Plaintiff Melody Graves; Count IV – Violation of Tenth Amendment (Infringement on State Police Powers); and Count V – The Federal Employee Vaccine Mandate is Contrary to Law and is Ultra Vires. Compl. [Doc. No. 1].

Plaintiffs filed their pending Motion on December 2, 2021. Plaintiffs' Motion focuses solely on Counts IV and V. Although Plaintiffs seek, in part, a temporary restraining order, Plaintiffs have not shown compliance with the requirements of Rule 65(b) of the Federal

---

[2] At the time Plaintiffs filed their Complaint, the November 22, 2021 vaccination deadline for federal civilian employees, without a granted or pending exception, had already passed. *See* Compl., ¶ 25; *see also* Resp. at 15 (citation omitted).

Rules of Civil Procedure. Notably, Plaintiffs did not obtain service of all Defendants until April 21, 2022 – nearly five months after seeking a temporary restraining order, and after having received two extensions of time from the Court to effect service.[3]

During the pendency of this action, on January 21, 2022, the United States District Court for the Southern District of Texas issued a nationwide preliminary injunction banning all Defendants, except the President of the United States, from implementing or enforcing EO 14043. *See Feds for Med. Freedom v. Biden*, No. 3:21-cv-356, 2022 WL 188329 (S.D. Tex. Jan. 21, 2022). Thereafter, on April 7, 2022, a panel of the Fifth Circuit vacated and remanded the matter, directing the district court to dismiss the case. *See Feds for Med. Freedom v. Biden*, 30 F.4th 503 (5th Cir. 2022). On June 27, 2022, however, the Fifth Circuit granted en banc review and vacated the panel's decision. *See Feds for Med. Freedom v. Biden*, 37 F.4th 1093 (5th Cir. 2022). Thus, the nationwide injunction currently remains in effect.[4]

In responding to Plaintiffs' Motion, Defendants raise a challenge to the Court's

---

[3] Under these circumstances, any request for a temporary restraining order appears to be procedurally improper at this stage. *See, e.g., GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984) (noting that "[d]elay in seeking relief" factors against demonstrating the irreparable harm necessary to obtain an injunction); *see also Flores v. United States*, No. 3:22-cv-70-MMH-PDB, 2022 WL 204247 at *2 (M.D. Fla. Jan. 24, 2022) (unexplained delay by federal employees challenging EO 14043 warranted denial of request for a temporary restraining order). The Court does not reach the issue, however, based on the conclusion that subject matter jurisdiction is lacking.

[4] As a consequence, EO 14043 is not currently being enforced against federal civilian employees. *See, e.g., Church v. Biden*, No. CIV-21-2815 (CKK), 2022 WL 1491100 at *4 (D.D.C. May 11, 2022) (taking judicial notice of directive from the Safer Federal Workforce Task Force "that during the pendency of the nationwide preliminary injunction, agencies should not 'process requests that they have already received for . . . exceptions to the COVID-19 vaccination requirement pursuant to EO 14043,' and that they should 'notify employees with pending exception requests . . . that an exception therefore is not necessary so long as the nationwide injunction is in place'" (citation omitted)).

exercise of federal subject matter jurisdiction. Alternatively, Defendants seek denial of the Motion on grounds Plaintiffs have not met their burden of showing preliminary injunctive relief is warranted.

The issue of subject matter jurisdiction is a threshold issue. For the reasons that follow, because the Court finds subject matter jurisdiction is lacking, the Court does not reach the merits of Plaintiffs' motion for preliminary injunctive relief but DISMISSES this action WITHOUT PREJUDICE for lack of subject matter jurisdiction.

## II.     Governing Standard

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (internal quotation marks omitted). District courts are precluded, on jurisdictional grounds, from addressing claims subject to a statutory review scheme. *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (internal quotation marks omitted).

The party invoking a federal court's jurisdiction bears the burden of establishing subject-matter jurisdiction. *Id*. Where, as here, a party brings a facial attack to challenge subject matter jurisdiction, the court must accept the allegations in the complaint as true. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995), *abrogated on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425, 437 (2001).

### III. <u>Discussion</u>

#### A. CSRA

Defendants first argue that the Civilian Employees' claims are precluded by the Civil Service Reform Act (CSRA). The Court must determine whether the CSRA precludes a separate action in the district court by applying a two-step framework. First, the Court must "find that Congress has allocated initial review to an administrative body where such intent is fairly discernible in the statutory scheme." *Thunder Basin*, 510 U.S. at 207 (internal quotation marks and citation omitted). Second, the Court must determine whether the claims are "of the type Congress intended to be reviewed within the statutory structure." *Id*. at 212. Three factors guide the determination under the second step: (1) whether the claims are wholly collateral to a statute's review provisions; (2) whether the claims are outside the agency's expertise; and (3) the availability of meaningful judicial review. *Id*. at 212-13.

##### 1. It is fairly discernible under the CSRA that Congress has allocated initial review to an administrative body.

The CSRA is a "comprehensive system for reviewing personnel action taken against federal employees." *United States v. Fausto*, 484 U.S. 439, 455 (1988). It was "designed to replace an 'outdated patchwork of statutes and rules' that . . . produced 'wide variations in the decisions . . . on similar matters and [produced] a double layer of judicial review that was 'wasteful and irrational.'" *Elgin v. Dep't of Treasury*, 567 U.S. 1, 13-14 (2012) (quoting *Fausto*, 484 U.S. at 444-45).

Under the CSRA, different administrative and judicial review procedures apply depending on the nature of the challenged employment action and the types of claims

asserted. Defs.' Resp. at 18. As pertinent here, the Fourth Circuit, in an unpublished opinion, has addressed the applicable provisions of the CSRA in the context of an analogous challenge to EO 14043. *Rydie v. Biden*, No. 21-2359, 2022 WL 1153249, at *3-4 (4th Cir. Apr. 19, 2022).

As the Fourth Circuit explained: "[e]mployees who have suffered a 'prohibited personnel practice' can file an allegation with the Office of Special Counsel." *Id.* at *3 (citing 5 U.S.C. § 1214(a)). "If the Special Counsel finds 'reasonable grounds' suggesting a 'prohibited personnel practice' occurred, he or she must report it to the Merit Systems Protection Board, the employing agency, and the Office of Personnel Management." *Id.* (citing § 1214(b)(2)(B)). "If the agency doesn't fix the problem, 'the Special Counsel may petition the Board,' and the Board can order corrective action." *Id.* (citing § 1214(b)(2)(C), (b)(4)(A). "Corrective action may include attorneys' fees, back pay, and other compensatory damages." *Id.* (citing § 1214(g)). "Judicial review of the Board's final orders is available in the United States Court of Appeals for the Federal Circuit." *Id.* (citing §§ 1214(c), 7703(b)(1)(A)). More serious agency actions against executive-branch employees include "removal," "suspension for more than 14 days," "reduction in grade," "reduction in pay," and "furlough of 30 days or less." *Id.* (citing § 7512(1)-(5)).

The CSRA affords employees "procedural rights, including notice, representation by counsel, the opportunity to respond, and a reasoned decision from the agency." *Id.* (citing §§ 7503(b), 7513(b)). Serious agency actions, as identified, can be appealed to the Merit Systems Protection Board. *Id.* (citing §§ 7503(c), 7513(d)). "And employees can appeal from the Board to the Federal Circuit." *Id.* (citing § 7703(b)(1)(A)). With this

statutory backdrop, the Court proceeds with the jurisdictional analysis.

The Supreme Court has rejected previous challenges seeking exceptions to the CSRA's comprehensive and exclusive scheme. In *Fausto*, the Supreme Court rejected a federal employee's attempt to appeal an adverse employment action not covered by the Merits Systems Protection Board. The employee argued that because the employment action was not covered, he had no avenue of relief and, therefore, was free to pursue other avenues of relief. The Supreme Court rejected this challenge, underscoring that the CSRA is a comprehensive and exclusive system for reviewing personnel actions taken against federal employees. *Fausto*, 484 U.S. at 455.

In *Elgin*, federal employees brought a constitutional challenge to the CSRA and sought to "carve out an exception to CSRA exclusivity for facial or as-applied constitutional challenges to federal statutes." 567 U.S. at 12. The Court rejected this challenge and again stressed its conclusion that "the statutory review scheme is exclusive, even for employees who bring constitutional challenges to federal statutes." *Id.* at 13.

The Civilian Employees argue that their claims fall outside the scope of this precedent because they raise a pre-enforcement facial challenge to an ultra vires executive order prior to any adverse employment action being taken against them. Pls.' Reply at 2-4.[5] Further the Civilian Employees contend they do not seek "employment-related relief

---

[5] The Civilian Employees cite to pre-*Elgin* cases regarding the CSRA for support. *NTEU v. Devine*, 733 F.2d 114 (D.C. Cir. 1984); *NTEU v. Horner*, 854 F.2d 490 (D.C. Cir. 1988); *NTEU v. Bush*, 891 F.2d 99 (5th Cir. 1989); *NFFE v. Weinburger*, 818 F.2d 935 (D.C. Cir. 1987); *NTEU v. Von Raab*, 489 U.S. 656 (1989). Defendants respond that the line of cases upon which Plaintiffs rely have been implicitly overruled by *Elgin*. The Court concurs. *See Payne v. Biden*, -- F. Supp.3d-- , No. CIV-21-3077(JEB), 2022 WL 1500563 at *7 (D.D.C. May 12, 2022) (rejecting plaintiff's

such as reinstatement or backpay." *Id*. at 2.  According to Plaintiffs it is not "fairly discernible" that Congress intended to bar such pre-enforcement actions. *Id*. at 4.

The Court, however, finds this argument hard to square with existing precedent. As the Tenth Circuit has recognized, it is "beyond dispute that the CSRA was intended to provide the exclusive procedure for challenging federal personnel decisions." *Petrini v. Howard*, 918 F.2d 1482, 1485 (10th Cir. 1990); *see also Tompkins v. United States Dep't of Veterans Affs.*, 16 F.4th 733, 735 (10th Cir. 2021) ("Supreme Court precedents virtually prohibit intrusion by the Courts into the statutory [employment] scheme[s] established by Congress. This judicial intervention is disfavored whether it is accomplished by the creation of a damages remedy or injunctive relief." (internal quotation marks and citation omitted)). Moreover, the Tenth Circuit does not focus on "the nature of the specific violation involved" but whether the alleged violation occurred "as a result of the employment relationship" when determining whether the challenge at issue is preempted by the CSRA.  *Lombardi v. Small Bus. Admin.*, 889 F.2d 959, 961 (10th Cir. 1989).

The Civilian Employees, however, insist they are not challenging any "personnel action" as defined in the CSRA.  They contend the vaccine mandate is not a "significant change in duties, responsibilities or working conditions."  Reply at 6 (citing 5 U.S.C. § 2302(1)(2)(A)(xii)). But the Tenth Circuit has held that "[e]ven where an action does not fall under this broad definition of prohibited personnel actions, it may still be preempted by the CSRA." *Franken v. Bernhardt*, 763 F. App'x 678, 681 (10th Cir. 2019) (citing *Hill*

---

reliance on "several decades-old D.C. Circuit cases" and finding, under *Elgin* and its progeny, that the CSRA operates to preclude pre-enforcement challenges to government-wide policies).

*v. Dep't of Air Force*, 884 F.2d 1318, 1320-21 (10th Cir. 1989)).  Consequently, where the claims are "inextricably tied to [the employee's] employment relationship with the federal government," the claims are preempted "regardless of whether or not the[] complained-of actions would fall under the CSRA's definition of prohibited employment practices and regardless of the timing of the alleged violations."  *Id.*

Under controlling Supreme Court and Tenth Circuit authority, the Court rejects the Civilian Employees' argument that it is not fairly discernible that Congress intended the CSRA to preempt their pre-enforcement challenge to EO 14043.  *See also Rydie*, 2022 WL 1153249 at *4 ("*Elgin* resolves step one. It's 'fairly discernible' that Congress intended CSRA to foreclose judicial review in at least some circumstances."); *Payne, supra* n. 5, 2022 WL 1500563 at *8 (explicitly rejecting any suggestion that the distinction between challenging an unconstitutional executive order as opposed to a statute would remove a civil servant's claim from CSRA's domain). To the contrary, the Court finds the CSRA's scheme is detailed, comprehensive and exclusive and it is fairly discernible that Congress intended the Civilian Employees' claims to be encompassed within that scheme.

### 2. The Civilian Employees' claims are of the type Congress intended to be covered by the statutory structure

As to the second step of the *Thunder Basin* test, the Court finds the Civilian Employees' claims are not "wholly collateral" to the CSRA's review provisions; the claims are not outside the agency's expertise; and the availability of meaningful review exists. The Court addresses in turn each of the Civilian Employees' arguments as to these factors.

The Civilian Employees argue their claims are wholly collateral to the CSRA

scheme because they challenge an executive order, not an adverse employment action. But that characterization is disingenuous. The Civilian Employees ultimately challenge an adverse employment action, i.e., their removal from employment and "a challenge to removal is precisely the type of personnel action . . . within the CSRA scheme." *Rydie*, 2022 WL 1153249 at *7; *see also Feds for Med. Freedom*, 30 F.4th at 511 ("this case [challenging EO 14043] is the vehicle by which they seek to avoid imminent adverse employment action."); *Am. Fed. of Gov't Emps. Local 2018 v. Biden*, -- F. Supp. 3d --, No. CIV-21-5172, 2022 WL 1089190 at * (E.D. Pa. Apr. 12, 2022) (*Local 2018*) (addressing federal civilian employees' constitutional challenges to EO 14043 and finding, under *Elgin*, that the claims raised were "not collateral to the CSRA scheme," but "directly related to the question of continued employment" even if the employees' were "asserting constitutional or pre-enforcement claims"). As such, the Civilian Employees' claims are not wholly collateral.

The Civilian Employees further argue that the Merit Systems Protection Board is set up to adjudicate employment actions, not determine the constitutionality of executive orders. However, that argument was directly addressed in *Elgin*, where plaintiffs similarly sought to evade the CSRA by claiming it could not handle constitutional claims. The Supreme Court found the Merit Systems Protection Board can still apply its expertise to the various threshold questions in a case preceding the constitutional claim and its decision may moot the need to reach the constitutional claim. *Elgin*, 567 U.S. at 22-23. Additionally, the Federal Circuit can adjudicate constitutional issues on appeal from the Merit Systems Protection Board. *Id. See also Rydie*, 2022 WL 1153249 at *7 (accord); *Feds for Med.*

*Freedom,* 30 F. 4th at 511 (accord).

Finally, the Civilian Employees argue that the CSRA would force employees to have their claims heard only by administrative bodies (such as the Merit Systems Protection Board) and only after enforcement of the action. Such a requirement would foreclose "meaningful judicial review." However, as Defendants underscore, decisions by the Merit Systems Protection Board are appealable to the Federal Circuit, and that court is wholly competent to provide meaningful judicial review. *See Feds for Med. Freedom,* 30 F. 4th at 509-510 (discussing how CSRA provides meaningful judicial review of civilian federal employees' pre-enforcement challenge to EO 14043); *Rydie,* 2022 WL 1153249 at *5-7 (availability of "meaningful judicial review" is most important *Thunder Basin* factor and concluding this factor weighed in favor of CSRA preemption of challenge to EO 14043). Here, the Civilian Employees are not foreclosed from all meaningful judicial review. Rather, they are foreclosed from judicial review when and where they want it.

In sum, the Court concludes, applying each of the *Thunder Basin* factors. The Civilian Employees' claims are of the type Congress intended to be covered by the CSRA. Accordingly, this Court lacks jurisdiction over their claims.

      **B.**    **FSLMRS**

Similarly, the Court concludes that the claims of AFGE are precluded by the Federal Service Labor-Management Relations Statute (FSLMRS), 5 U.S.C. § 7101 et seq. Defendants cite persuasive authority in support of their argument that this Court lacks subject matter jurisdiction over the claims of the Union brought in its own right. Notably, in *Local 2018*, the district court dismissed for lack of subject matter jurisdiction a similar request for

injunctive relief to prevent enforcement of EO 14043 brought by AFGE. *Id*., 2022 WL at * 5-6. The district court deemed "directly on point" the decision of the Court of Appeals for the District of Columbia Circuit in *Am. Fed. of Gov't Emps. v. Trump*, 929 F.3d 748, 758 (D.C. Cir. 2019), holding that district courts have no jurisdiction over pre-implementation review of Executive Orders as such review is encompassed by the FSLMRS. *See also Serv. Emps. Int'l Union Local 200 United v. Trump*, 975 F.3d 150, 152 n. 2 (2d Cir. 2020) (per curiam) (accord).

In its Reply, AFGE argues that "[t]he FSLMRS deals with disputes between a union and the specific agency which employs the union's members." Reply at 7. AFGE contends that it "has no dispute with the agency employing its members" but only "with President Biden and his *ultra vires* EO." Reply at 7.[6] But AFGE, which bears the burden of proof on this jurisdictional issue, cites no authority to support its position and fails to distinguish the on-point authority cited.

The Court finds the reasoning of the cases to address the issue persuasive. Therefore, the Court finds the claims brought by AFGE are precluded by the FSLMRS. Accordingly, the Court dismisses those claims for lack of subject matter jurisdiction.

---

[6] As Defendants point out, Plaintiffs fail to demonstrate how AFGE could bring a claim directly against the President. Although Plaintiffs argue the President's execution of EO 14043 is an ultra vires act, the courts to address this issue have found EO 14043 is a permissible exercise of executive authority. *See, e.g., Oklahoma v. Biden*, -- F. Supp. 3d --, No. CIV-21-1136-F, 2021 WL 6126230 (W.D. Okla. Dec. 28, 2021) (citing *Rydie v. Biden*, 2021 WL 5416545 (D. Md. Nov. 19, 2021)).

## IV. Conclusion

For the reasons set forth, the Court lacks subject matter jurisdiction over Plaintiffs' claims brought in this action. Accordingly, the Complaint is DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED this 22nd day of July, 2022.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE